Filed 3/9/23 (unmodified opn. attached)
CERTIFIED FOR PUBLICATION

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | E078211 |
| Plaintiff and Respondent, | (Super.Ct.No. CR36044) |
| v. | The County of Riverside |
| PEPE LOPEZ, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

We modify the majority opinion filed in this matter on February 23, 2023, to remove footnote 9 from page 16.

Except for this modification, which does not affect the judgment, the opinion and the dissenting opinion remain unchanged.

CERTIFIED FOR PUBLICATION


SLOUGH
                                                                                            J.

We concur:


MILLER
          Acting P. J.


RAPHAEL
                    J.


cc:     See attached list


1

MAILING LIST FOR CASE: E078211
The People v. Pepe Lopez


Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502


Alan L. Amann
Office of the State Attorney General
P.O. Box 85266
San Diego, CA 92186-5266


Anthony J. Dain
330 J Street, Suite 609
San Diego, CA 92101


Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101 2396

Filed 2/23/23 (unmodified opinion)
*See dissenting opinion*

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


THE PEOPLE,

    Plaintiff and Respondent,

v.

PEPE LOPEZ,

    Defendant and Appellant.

E078211

(Super.Ct.No. CR36044)

OPINION


APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Anthony Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1992, a jury convicted Pepe Lopez of first degree murder with a true finding on the prior-murder special circumstance (Pen. Code, §190.2, subd. (a)(2)) after hearing evidence the victim was shot and killed during a robbery in which Lopez participated and that Lopez had previously been convicted of first degree murder for his involvement in another robbery.[1] In 2019, Lopez filed a section 1172.6 (formerly section 1170.95) petition seeking to vacate the conviction under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), which amended the definition of felony murder and eliminated the natural and probable consequences theory of murder.[2] The trial court summarily denied the petition, concluding the special circumstance finding rendered Lopez ineligible for resentencing as a matter of law because it demonstrated the jury had found he "personally killed, or personally shared a specific intent to kill."

On appeal, Lopez concedes the special circumstance finding established the requisite mental state for a conviction of first degree murder under current law, but argues it did not similarly establish "the actus reus necessary for direct aider and abettor liability." The People argue that whether the record establishes Lopez's guilt as an aider and abettor is irrelevant because the record establishes his guilt under the current felony-murder rule. They argue the jury's verdict demonstrates they necessarily found he was a "participant in the perpetration or attempted perpetration of a [qualifying] felony . . . in

_____

[1] Unlabeled statutory citations refer to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We use section 1172.6 to refer to whichever of the two statutes was in effect at the relevant time.

which a death occurs" and acted "with the intent to kill" within the meaning of section 189, subdivision (e)(2). We agree with the People and therefore affirm.

# I

# FACTS

On the evening of February 2, 1990, Gilbert Sabatka was shot three times at close range while sitting in his car at a McDonald's drive-thru in Corona. About 30 minutes later, a convenience store clerk in Temecula was shot and killed during another robbery. On May 25, 1990, a jury convicted Lopez of the first degree murder of the Temecula store clerk.[3]

A few months later, the Riverside County District Attorney charged Lopez with the first degree murder of Sabatka and alleged the prior-murder special circumstance in section 190.2, subdivision (a)(2). The trial took place in December 1992 before Riverside County Superior Court Judge Robert D. Macomber and proceeded in two phases, the murder and the special circumstance.

The prosecution presented the following evidence in phase one.[4] Moments before the shooting, the McDonald's employee who was taking Sabatka's order heard the voices

---

[3] Lopez's confederate, John Howe, also pled guilty to first degree murder for the killing of the clerk in Temecula.

[4] We take the trial evidence from our opinion affirming Lopez's conviction on direct appeal. (*People v. Lopez* (Feb. 8, 1994, E011097) [nonpub. opn.] (*Lopez I*); see *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [courts may and should consider the record of conviction, which includes appellate opinions, at the prima facie stage of a section 1172.6 petition].)

of two other men over the drive-thru speakers. She heard someone ask, "What do you want?" immediately followed by gunshots. According to eyewitnesses who could see the McDonald's parking lot from their cars, two men fled the drive-thru on foot immediately after the gunshots, one of whom was trying to tuck a short-barreled rifle under his shirt. The men ran across the street, jumped into a car parked near a freeway onramp, and immediately sped off.

About a half an hour later, a convenience store clerk in Temecula was shot and killed during a robbery. A few hours after that shooting, the police found Lopez and three other men sitting around a fire in an uninhabited home in Temecula. They also found on a nearby embankment a wrecked vehicle matching the witnesses' description of the car used to flee the crime in Corona. Next to the car, they found a sawed-off .22-caliber rifle whose bullets and shell casings matched those from both the Corona and Temecula shootings. The other men with Lopez were Jose Andrade, Daniel Visoso, and John Howe.

According to Visoso, the four of them had decided to go out driving that day after spending the afternoon drinking alcohol. He said the car was his and he had initially been the one driving, but at some point Andrade took his place and he passed out drunk in the backseat. He was aware the car had stopped several times, but he didn't know when or where. He woke up when the car went off the road and rolled upside down, after which, all four of them crawled out and found shelter in the house where the police found them.

In an interview with police, Lopez also said that Andrade had been driving and Visoso was passed out drunk in the backseat. He said he and Howe had been outside the

car during the Temecula shooting and Howe had fired the gun. He initially denied firing the gun that night, but when the officers said they would test his hands for gunshot residue, he claimed he had fired the gun earlier in the day before they went out driving.

During closing arguments, the prosecutor and defense attorney agreed Sabatka was killed during the commission or attempted commission of a robbery; the issue was identification. The witnesses' description of the person fleeing with the gun matched Lopez's clothing but not his height. The prosecutor argued the evidence proved it was Lopez who shot Sabatka during the robbery and thus the jury should find him guilty of first degree murder under the felony-murder rule. The prosecutor noted that even if the jury wasn't persuaded that he was the shooter, as long as they found he aided and abetted the robbery, they could still find him guilty of first degree murder under the felony murder-rule. However, he emphasized again the prosecution's theory was that Lopez was the shooter: "Don't get me wrong; I am presenting a single version of the facts, and I'm asking you to adopt a single version of the facts, and that is that [Lopez] personally wrapped his finger around the trigger and point[ed] directly into the face of Gilbert Sabatka, and that's it. That's what I'm advocating."[5] Defense counsel relied on the testimony about the gunman's height to argue the evidence didn't prove Lopez was the shooter. Instead, he argued Lopez had stayed in the car during the incident and hadn't played any role in aiding the robbery.

---

[5] On our own motion, we took judicial notice of the transcript of Lopez's trial, which is part of the record of conviction. (Evid. Code, §§ 452, subd. (d), 459, subd. (d).)

5

The trial court instructed the jury on first degree premeditated murder, first degree felony murder, and accomplice liability. Although the prosecutor did not rely on a natural and probable consequences theory, the court also instructed the jury on that doctrine.[6] The felony murder instruction identified robbery as the qualifying felony and set forth the elements of that offense.

At the conclusion of phase one, the jury found Lopez guilty of first degree murder. (§ 187.)

In the second phase of trial, the judge instructed the jury that in order to find the prior-murder special circumstance allegation true "each of the following facts must be proved: One, [Lopez] *personally killed or personally shared a specific intent to kill* Gilbert Sabatka. Two, [Lopez] has previously been convicted of first degree murder." (Italics added.)

During closing argument, the prosecutor told the jurors that, having determined Lopez was guilty of first degree murder, they now had to decide whether he was the shooter or shared the shooter's intent to kill during the incident. Noting that Howe had pled guilty to being the shooter in the Temecula murder case, the prosecutor argued, "As I said before, you analyze the evidence carefully, it comes back with [Lopez] pulling the trigger in this case, not Temecula, but this case." Defense counsel argued that if the jury

---

[6] Because Lopez's trial predated the California Supreme Court's decision in *Prettyman*, his natural and probable consequences jury instruction did not specify the target crime he was charged with aiding and abetting. (See *People v. Prettyman* (1996) 14 Cal.4th 248, 262, 265-266 (*Prettyman*) [holding that the trial court has a duty to identify the target crime for purposes of the natural and probable consequences doctrine].) Instead, the instruction identified the target crime as the "originally contemplated crime."

6

had decided Lopez was simply an accomplice to the robbery in phase one "then you will have to decide whether you believe that he had the specific intent to kill Gilbert Sabatka."

During deliberations, the jury asked, "At what point in time do we establish intent?" and the judge responded, "The intent to kill required by law must exist at or before the time of the act which resulted in the death of the victim." The jury returned a true finding on the prior-murder special circumstance allegation.

On March 6, 1992, the judge sentenced Lopez to life in prison without the possibility of parole. In 1994, we affirmed the judgment in an unpublished opinion. (*Lopez I*, *supra*, E011097.)

On February 6, 2019, after Senate Bill 1437 went into effect, Lopez filed a section 1172.6 petition alleging he was convicted under either a felony murder or natural and probable consequences theory of liability and could not be convicted of murder under the new law changes to murder liability. On December 10, 2021, Riverside County Superior Court Judge John D. Molloy summarily denied Lopez's petition on the ground the prior-murder special circumstance finding rendered him ineligible for relief as a matter of law.

## II

## ANALYSIS

Lopez argues his record of conviction establishes he harbored the requisite *mental state* (or mens rea) for murder but doesn't establish he committed the requisite *physical act* (or actus reus) because it's possible the jury found only that he aided the robbery, not

7

the killing. We conclude the record demonstrates as a matter of law that Lopez is guilty of first degree felony murder under section 189, subdivision (e)(2).

A. *Senate Bill 1437*

"Generally, malice is an essential element of the crime of murder. (§ 187.) Malice may be either express or implied. It is express 'when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature.' (§ 188, subd. (a)(1).) It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' (*Id.*, subd. (a)(2).) Implied malice has " 'both a physical and a mental component. The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' . . . The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' " (*People v. Johns* (2020) 50 Cal.App.5th 46, 57 (*Johns*).)

Prior to Senate Bill 1437, the felony murder and natural and probable consequences doctrines were exceptions to the actual malice requirement. Under the old felony-murder doctrine, a defendant was liable for first degree murder if their confederate killed someone while they (the defendant) participated in the commission or attempted commission of a qualifying felony. (Former § 189.) The necessary mental state was simply the intent to commit a qualifying felony. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) Or, put differently, malice was *imputed* to the participant based on their

8

willingness to commit a felony our Legislature deemed "inherently dangerous to human life." (*People v. Chun* (2009) 45 Cal.4th 1172, 1184.)

Senate Bill 1437 "narrowed the scope of the felony-murder rule" by adding section 189, subdivision (e). (*People v. Strong* (2022) 13 Cal.5th 698, 703.) Under the new felony-murder rule, participation in a qualifying felony in which a death occurs is no longer sufficient to justify liability for first degree murder. Instead, the defendant must be the actual killer, intended to kill, or, if neither of those apply, felony-murder liability will still lie if they were a major participant in the underlying felony and acted with reckless indifference to human life. The provision states: "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Under the natural and probable consequences doctrine as it existed before Senate Bill 1437, a person could be held liable not only for the crime they intend to commit with their confederate (the target crime), but also for any other offense (nontarget crime)— including murder—"committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." (*Prettyman*, *supra*, 14 Cal.4th at

9

pp. 254, 262-263.) Because a nontarget murder "is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the [murder]." (*People v. Chiu* (2014) 59 Cal.4th 155, 164.) In other words, the necessary mental state was simply the intent to aid and abet an accomplice in the commission of a criminal act that, "judged objectively," would "naturally, probably, and foreseeably result in a murder." (*Id*. at pp. 157, 164, 166.) Like the old felony-murder rule, malice was imputed based on the defendant's willingness to participate in a crime—in this case, an objectively dangerous one. (See *Prettyman*, at p. 260 [the doctrine "is based on the recognition that 'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion'"].)

Senate Bill 1437 wholly eliminated the natural and probable consequences doctrine for first and second degree murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 849.) It did so by amending section 188 to state: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime *shall act with malice aforethought*. Malice shall not be imputed to a person based solely on his or her participation in a crime."(§ 1" 88, subd. (a)(3), italics added.)

Thus, after Senate Bill 1437, section 189, subdivisions (e)(1) and (e)(3) contain the only exceptions to the malice requirement. Now, the only circumstances under which malice may be *imputed* to justify murder liability is when a person participates in the commission or attempted commission of a qualifying felony and is either the actual killer

10

or a major participant in the felony who acted with reckless indifference to human life. (§ 189, subd. (e)(1) & (3).)

B.      *Section 1172.6*

In addition to its substantive amendments, Senate Bill 1437 "added section [1172.6], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Such offenders may petition to have their convictions vacated under this provision and are entitled to relief if (1) the complaint or information filed against them "allowed the prosecution to proceed . . . under the natural and probable consequences doctrine," (2) they were "convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder," and (3) they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189." (§ 1172.6, subd. (a).)

If a petition makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold "a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced." (§ 1172.6, subds. (c), (d)(1).) At that hearing, the People bear the burden "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).)

11

In *Lewis*, our Supreme Court provided guidance on assessing whether a petitioner has made a prima facie showing entitling them to an evidentiary hearing under section 1172.6, subdivision (d). The court explained the inquiry is limited to the allegations in the petition and undisputed facts from the record of conviction (which includes the appellate opinion). (*Lewis*, *supra*, 11 Cal.5th at p. 971.) As in "the analogous prima facie inquiry in habeas corpus proceedings," the court must accept the petitioner's factual allegations as true "and make[] a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." (*Ibid.*)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) It is only where the record of conviction establishes the petition lacks merit *as a matter of law* that the court may deny the petition without a hearing. (*Id.* at p. 971.)

C.      *Lopez Is Not Entitled to Relief as a Matter of Law*

Here, the record conclusively establishes, at the very least, that Lopez is guilty of first degree felony murder under section 189, subdivision (e)(2) as a person who, "was not the actual killer, but, with the intent to kill, aided, abetted, . . . or assisted the actual killer in the commission of murder in the first degree."

Though he was tried under both a natural and probable consequences theory and a felony-murder theory, on this record the theories were identical because robbery—a

12

qualifying felony under section 189—was the target crime for both.[7] Thus, regardless of the underlying theory of liability, by finding Lopez guilty of first degree murder, the jury necessarily found one of three things was true beyond a reasonable doubt: (i) he was the actual killer, (ii) he was an accomplice to first degree murder, or, at the very least, (iii) he was engaged in the commission or attempted commission of a qualifying felony in which a death occurred.[8]

That last finding, coupled with the intent to kill finding from the special circumstance, establishes Lopez's guilt under the current felony-murder rule. This is because, under section 189, subdivision (a), all murder that is "committed in the perpetration of, or attempt to perpetrate [a qualifying felony] . . . is murder of the first degree." And here, the jury found Sabatka's murder was committed while Lopez and his confederate were robbing or attempting to rob him. That finding, plus the intent to kill finding from phase two of the trial, establishes the jury found that "with the intent to kill, [Lopez] aided, abetted, . . . or assisted the actual killer in the commission of murder in the first degree" within the meaning of section 189, subdivision (e)(2).

---

[7] Lopez's jury instruction on the natural and probable consequences doctrine described the target crime as the "originally contemplated crime," but the evidence was undisputed that Sabatka was killed during a robbery or attempted robbery. This is because the jury heard no evidence of any other crimes besides robbery and murder, both sides' closing arguments focused exclusively on those two crimes, the felony murder instruction identified robbery as the predicate felony, and robbery was the only other crime the instructions described for the jury.

[8] Because this case does not turn on the trial court's use of the natural and probable consequences instruction, Lopez's reliance on *People v. Pacheco* (2022) 76 Cal.App.5th 118, review granted May 18, 2022, S274102, is misplaced.

13

Lopez and our dissenting colleague argue for a different interpretation of the felony-murder rule. They read section 189, subdivision (e)(2) to require an act that assists the killing itself, not just the underlying felony. In support, they argue the phrase "assisted the actual killer *in the commission of murder in the first degree*" in section 189, subdivision (e)(2) means "assisted the actual killer *in the killing*." (Italics added.) Based on this interpretation, our dissenting colleague agrees with Lopez that the record does not conclusively establish his ineligibility because nothing in the record establishes he aided in the *act of shooting* Sabatka.

The California Supreme Court has already rejected this same argument in *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*). In that case, the jury had found true the felony-murder special circumstance, which applies to "[e]very person, not the actual killer, who, with the intent to kill, aids, abets, . . . or *assists any actor in the commission of murder in the first degree*" (§ 190.2, subd. (c), italics added), if the murder was committed "while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of [a qualifying felony]" (§ 190.2, subd. (a)(17).) The defendant argued, as Lopez does here, that the italicized phrase means "the aiding or abetting has to relate to the act of killing itself, rather than just the underlying felony." (*Dickey*, *supra*, at pp. 900-901.) The court disagreed, holding that "under the felony-murder doctrine," a person who participated in the commission or attempted commission of a qualifying felony in which a death occurred is, by definition, "*guilty of aiding or abetting first degree murder[].*" (*Id.* at p. 900.)

14

Here, because the Legislature used the same phrase interpreted in *Dickey* when amending section 189 to state the new felony-murder rule, we assume they intended it to have the same meaning. "[W]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language." (*People v. Gonzales* (2017) 2 Cal.5th 858, 871; see also *People v. Scott* (2014) 58 Cal.4th 1415, 1424 ["It is a settled principle of statutory construction that the Legislature is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof" [cleaned up]].)

But even if our high court hadn't already interpreted the language at issue in the context of another statute, Lopez's reading conflicts with the plain language of section 189 and defies common sense. Section 189, subdivision (a) defines "murder in the first degree" as any murder that is "committed in the perpetration of, or attempt to perpetrate [a qualifying felony]." Thus, under the terms of the felony-murder statute, the two phrases are equivalents: assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa.

Lopez's interpretation requires too much of the felony-murder rule. The whole purpose of Senate Bill 1437 was to stop the practice of imputing malice to defendants to justify convicting them of murder. A defendant who participates in a qualifying felony *while harboring express malice* does not fall into the class of offenders the new law was enacted to protect. (See § 188, subd. (a)(3) ["in order to be convicted of murder, a principal in a crime *shall act with malice aforethought*. Malice shall not be imputed to a

15

person based solely on his or her participation in a crime"], italics added.) In other words, because express malice is an element of section 189, subdivision (e)(2) felony murder liability, there is no reason to interpret the actus reus requirement as anything different than what the felony murder actus reus requirement was before Senate Bill 1437— "aiding and abetting the underlying felony or attempted felony that results in the murder." (*People v. Clark* (2016) 63 Cal.4th 522, 615.)

Another reason we don't read the provision the way Lopez and our dissenting colleague do is because their interpretation makes it easier for the prosecution to obtain a conviction for defendants who harbored the *less culpable* mindset of reckless indifference to human life than for those who acted with express malice.[9] For the former class of defendants, the prosecution need only prove they played a major role in the felony to be guilty of first degree murder under section 189. For the latter—those who acted with actual malice—the prosecution would have to prove not only aiding the qualifying felony *but aiding the murderous act as well*. (Compare § 189, subd. (e)(2) with § 189, subd. (e)(3).) In other words, their interpretation creates a new offense of direct and abetting *plus an additional element*: that the accomplice to the murder was also engaged in a qualifying felony when the death occurred. The Legislature was clear about the purpose behind the recent changes to murder liability—to stop the practice of imputing malice. There is no indication they intended to make felony murder liability *more difficult* to

---

[9] Reckless indifference is a less culpable mindset than the "*conscious disregard* for life" required for implied malice. (*Johns*, *supra*, 50 Cal.App.5th at p. 57, italics added.)

prove than direct aiding and abetting in cases where the defendant acted with express malice.

As the Legislature explained in their legislative findings, their aim in amending the felony-murder rule was "to ensure that murder liability is not imposed on a person who is not the actual killer, *did not act with the intent to kill*, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § l, subd. (f), italics added.) In the context of felony murder, "act[ing] with the intent to kill" means aiding and abetting a qualifying felony in which a death occurs, *with the intent to kill*. (*Dickey*, *supra*, 35 Cal.4th at p. 900.) Indeed, as our dissenting colleague notes, Senate Bill 1437's author described the purpose of the new law as "'restor[ing] proportional responsibility in the application of California's murder statute [by] reserving the harshest punishments for *those who intentionally planned* or actually committed the killing.'" (Assem. Com. on Public Safety, June 26, 2018, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.), at p.4 [italics added].) Defendants who aid a qualifying felony with an *intentional plan* to kill (i.e., an intent to kill) are the exact type of offender the author is referring to in that statement, the type who can still be convicted of first degree murder under the recent changes to murder liability.

Finally, we don't share our dissenting colleague's concern that the jury could have convicted Lopez of first degree murder based solely on his role as the getaway driver or a passenger. (Dis. opn. *post*, at pp. 15-17.) In our view, the jury's special circumstance finding that Lopez was either the actual killer or shared the killer's intent to kill shows

17

they rejected the defense's theory that Lopez had stayed in the car and played no role in the attempted robbery or murder. Plus, while there was evidence placing Lopez in the McDonald's parking lot with a gun, no evidence placed him in the car. Lopez and Visoso said Andrade was driving, and Visoso said he was passed out in the backseat. Lopez didn't say whether he got out of the car for this robbery but he admitted doing so about 40 minutes later for the next one.

Because we conclude the record of conviction demonstrates as a matter of law that, acting with the intent to kill, Lopez aided the actual killer "in the perpetration or attempted perpetration of a [qualifying] felony . . . in which a death occurs," we uphold the summary denial of his section 1172.6 petition.

### III

### DISPOSITION

We affirm.

CERTIFIED FOR PUBLICATION

SLOUGH _____

J.

I concur:

MILLER _____

Acting P. J.

[*People v. Lopez*, E078211]

RAPHAEL, J., Dissenting.

The majority opinion assigns no meaning to part of one of the recent statutory provisions narrowing the felony murder law. When a defendant assists a felony such as robbery and a cohort kills a victim, the provision requires the defendant to have had an intent to kill to be liable for murder. It also requires an *act* by the defendant that assisted the killer in the commission of the murder. The majority reads the latter as requiring that a defendant acted to aid the *robbery*, not necessarily the *murder*. That is not what the statute says. As well, aiding the robbery is the precise act needed to find the defendant liable for felony murder *before* the new law. Under the majority opinion, the clause can have no effect as it eliminates liability for no one who previously would have been responsible for murder. It also means that a jury could be instructed that it need not decide the element in the jury instruction tracking the statute.

The record does not show that the jury at Pepe Lopez's murder trial found an act to aid the killer in the murder. For that reason, I would hold that Lopez is not ineligible for relief on his Penal Code section 1172.6 petition and would remand for a hearing as to whether he can presently be convicted of murder.

I.      The Statutory Provisions

Since the 1872 Penal Code, felony murder liability has been found in section 189, subdivision (a).[1] Under the doctrine, a participant in a crime such as robbery can be

---

[1] Further code section references are to the Penal Code. Penal Code section 189, subdivisions (a) and (e) will be referred to as "Section 189(a)" and "Section 189(e)."

1

convicted of first-degree murder if an accomplice kills someone during the crime.  As with all crimes, felony murder requires intent (the mens rea) and an act (the actus reus).

Under section 189(a), "the required mental state is the specific intent to commit the underlying felony" such as robbery.  (*People v. Booker* (2011) 51 Cal.4th 141, 175.) "The actus reus requirement for an aider and abettor to first degree felony murder is aiding and abetting the underlying felony or attempted felony that results in the murder." (*People v. Clark* (2016) 63 Cal.4th 522, 615.)  Thus, for decades under the felony murder law, a defendant needed only intend a crime like *robbery* and act to aid the *robbery*.

In 2018, however, the Legislature passed Senate Bill No. 1437, which "significantly narrowed the scope of the felony murder rule" and "created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).)  Those limitations to section 189(a) liability are found in section 189(e).

Section 189(e) begins:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven. . . ."  It then lists three categories of defendants.

With those categories, section 189(e) "now limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2))." (*Strong*, *supra*, 13 Cal.5th at p. 708.)  Participants are

2

also liable for murder if they were "major participant[s] in the underlying felony and acted with reckless indifference to human life. . . . (*Id.*, § 189, subd. (e)(3).)" (*Ibid.*)

The issue before us concerns only the second category of defendants. The full text of the statutory provision, section 189(e)(2), reads, with italics added: "The person was not the actual killer, but, with the intent to kill, *aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree*."

Just as the first portion of section 189(e)(2) raises the intent (mens rea) requirement for participants in section 189(a) felony murder, the italicized portion heightens the act (actus reus) requirement.

II.     A Trial Today

In 1992, Lopez was convicted at a trial involving felony murder jury instructions, where a victim was shot dead while sitting in his car as a gunman attempted to rob him at a McDonald's drive-through. If Lopez went to trial under current law and the prosecution wished to base his murder liability on section 189(e)(2), the prosecution would have to prove the section 189(e)(2) elements *in addition to* the traditional elements of felony murder drawn from section 189(a).

The model jury instruction illuminates what the prosecution would have to prove today. Lopez's jury would first have to find four elements that establish Lopez's traditional felony murder liability under section 189(a). The jury would need to find that he intended to aid and abet a robbery (his mens rea); *that he aided and abetted an*

3

*attempted robbery* (his actus reus); that his cohort attempted the robbery; and that his cohort caused the death during the attempt. (CALCRIM 540B [elements 1 through 4, italics added].) The italicized actus reus requirement reflects that, today as in 1992, a jury must find that Lopez participated in the attempted robbery under section 189(a).

Today, however, the jury would then have to find the elements of section 189(e)(2) before convicting him of murder. A "participant" in a traditional felony murder "is liable for murder only if a [Section 189(e) category] is proven. . . ." (Section 189(e).)

Removing brackets to adapt the model instruction, a jury would have to find:

>  5A. The defendant intended to kill;

>  AND

>  5B. The defendant assisted the perpetrator in the commission of first-degree murder. (CALCRIM 540B [section 189(e)(2) option for the fifth element].)[2]

At this point, the jury would have already determined that Lopez participated in the felony (as required by section 189(a)) by finding that he assisted an attempted robbery. For the act identified as 5B of the model instruction (tracking section 189(e)), the jury would be asked to find that he assisted "the perpetrator in the commission of first-degree murder." For those subject to section 189(e)(2), the act requirement narrows

---

[2] The full text of the section 189(e)(2) act element in CALCRIM 540B is: "The defendant (aided and abetted[,])/ [or] counseled[,]/ [or] commanded[,]/ [or] induced[,]/ [or] solicited[,]/ [or] requested[,]/[or] assisted) the perpetrator in the commission of first degree murder(./;)" The model instruction does not include a temporal finding. Section 189(e)(2), though, requires that the defendant acted "with the intent to kill" in aiding the killing, so he must have an intent to kill *at the time he acted* to aid the murder.

the set of those liable for murder from those who (with intent to kill) assisted the robbery to a subset who (with intent to kill) also assisted the perpetrator in committing the murder.

The model instruction tracks section 189(e)(2), which requires that the defendant "aided . . . the actual killer in the commission of murder in the first degree." It also accords with the Legislature's purpose of restricting guilt for felony murder to better accord with an individual's culpability. A direct aider of a killing can be as responsible as the killer. The author of Senate Bill 1437 identified such a person in characterizing the bill's purpose as "'to restore proportional responsibility in the application of California's murder statute reserving the harshest punishments for *those who intentionally planned* or actually committed the killing.'" (Assem. Com. on Public Safety, June 26, 2018, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.), at p.4 [italics added].)

But the section 189(e)(2) actus reus requirement accordingly could exclude some of those with minor roles in the underlying felony and no direct involvement in the killing. This requirement affects only a narrow set of felony murder cases. It eliminates murder liability only for those who do not fall under section 189(e)(1) or (e)(3), have intent to kill, and assist in the underlying crime but not in the killing. It does, though, mean that a getaway driver who was told about the killing and then aided a robbery only by helping the robbers escape with their loot cannot be convicted under a felony murder theory. The driver would not have assisted in the commission of murder, which at the time of the flight was complete. (*People v. McDonald* (2015) 238 Cal.App.4th 16, 24-25;

5

see *People v. Pulido* (1997) 15 Cal.4th 713, 716.) The getaway driver's act can establish only that he is an accessory after the fact to murder, a "separate criminal offense." (*People v. Jennings* (2010) 50 Cal.4th 616, 668; see § 32.) Likewise, the actus reus requirement means that other participants with a small role in a robbery, such as a person who drove the robbers to the scene, may have a plausible jury argument that they did not aid the actual killer in the commission of murder, even if they are found to have intent to kill based on (for example) being told that the robbers would shoot during the robbery. On the other hand, the actus reus requirement would not eliminate murder liability for those with a major role in a robbery even if they did not aid in the murder, as they can be convicted under section 189(e)(3) based on their intent and role.

No matter how narrow its application, the section 189(e)(2) actus reus requirement is express in the statute and must be applied.

### III.    Lopez's Section 1172.6 Petition

Lopez submitted a form section 1172.6 petition asserting under oath that he could not be convicted today because of the changes made to sections 188 and 189 of the Penal Code effective in 2019. He crafted his own declaration stating that it was not determined he was the actual shooter, and he averred that he was "not the individual that shot the victim nor did I aid and abet the individual in this crime."

The trial court summarily denied the petition for the failure to plead a prima facie case. This denial was correct if "the petition and record in the case establish conclusively that [Lopez] is ineligible for relief." (*Strong*, *supra*, 13 Cal.5th at p. 708.)

6

Lopez contends that the record does not do so, as "section 189, subdivision (e)(2) requires assisting the act of killing itself, rather than just the underlying felony, because it uses the phrase 'assisted the actual killer *in the commission of murder in the first degree*.' (Italics added.)" (Maj. opn., *ante*, at p. 13.)

The majority rejects Lopez's claim on the view that the actus reus required by section 189(e)(2) is identical to that required for a felony murder conviction under section 189(a) at the time of his 1992 trial. The majority starts from the correct premise by stating that if Lopez was convicted based on felony murder liability for an accomplice's killing, the jury necessarily found that "he was engaged in the commission or attempted commission of a qualifying felony in which a death occurred." (Maj. opn., *ante*, p. 12.) But then the majority reasons that "the two phrases are equivalents: assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Id*. at p. 14.) The majority sees "no reason to interpret the actus reus requirement" of section 189(e)(2) "as anything different than what it was before SB 1437." (Maj. opn., *ante*, p. 14.)

There are two cogent reasons to interpret the new section 189(e)(2) actus reus requirement differently than the one that existed for felony murder in section 189(a).

First, the language differs. In section 189(e)(2), the Legislature required that the defendant "assisted the actual killer in the commission of murder in the first degree." This is different language than requiring that the defendant assisted the underlying felony (here, the attempted robbery). The Legislature could have said the latter, but it did not.

7

Second, the majority's interpretation renders meaningless the entire 21-word actus reus requirement in section 189(e)(2). The Legislature "does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.)

The requirement is rendered meaningless because a person convicted on a section 189(a) felony murder theory must have assisted in a qualifying felony in which death occurs. Section 189(e) applies to such "participant[s] in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs." Section 189(e) narrows that class by rendering such participants "liable for murder only if one of the following is proven," including subdivision (e)(2). One way that section (e)(2) narrows that class is by requiring the intent to kill. The majority reads the provision precisely as if it had stopped there. But the subdivision proceeds for another 21 words, stating ". . . with the intent to kill, *aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree*." (Italics added.) Those words are given no meaning if they mean the same as what was required to make Lopez a participant in the crime. They could never affect a case.

The consequence of the majority's interpretation to future trials can be seen by considering the current model jury instruction, CALCRIM 540B, discussed in section II above. In determining whether a defendant is guilty of felony murder, a jury first finds that he committed or aided in a felony such as robbery. But then the jury is to apply section 189(e)(2) by finding that the defendant assisted the perpetrator in a first-degree

8

murder. The jury could — under the majority's view — receive an instruction from the court that it has already decided that element. A defendant would have no ability to argue that he did not aid the killer in the commission of murder, as the statute requires.

The majority's claim that the "plain language" supports its view (maj. opn., *ante*, at p. 14) is unconvincing, as it does not apply section 189(e)(2)'s language. But the majority is correct that section 189(e)(2)'s "intent to kill" mens rea requirement satisfies much of the Legislature's purpose in reforming the felony murder law. (Maj. opn., *ante*, pp. 15-16 [citing § 188, subd. (a)(3)].) The bill's author, though, was also concerned about long sentences for people who had "'"very peripheral involvement in the crime that resulted in a death."'" (*People v. Vang* (2022) 82 Cal.App.5th 64, 86.) Senate Bill No. 1437 thus expressly addressed both mens rea and actus reus, reflecting an intent to identify those who "*act* with the intent to kill" (Stats. 2018, ch. 1015, § l, subd. (f) [emphasis added].) (See *People v. Alaybue* (2020) 51 Cal.App.5th 207, 217 ["Senate Bill 1437 . . . amended section 189 by adding subdivision (e), which imposed a mens rea and actus reus requirement for accomplice liability for first degree felony murder"].) It required not just an intent to kill, but intent to kill when acting to aid the killing.

The other section 189(e) categories address actus reus too. The first prong addresses actus reus only: the killer during a robbery is liable for first degree murder even if the killing were accidental. (Section 189(e)(1).) The third prong addresses actus reus in requiring that the defendant act as a "major participant" in a listed felony along with

9

having the mens rea of "reckless indifference to human life." (Section 189(e)(3).)[3] The Legislature in SB 1437 was concerned with intent *and* actions.

The majority supports its view that "assisting the actual killer in the commission of murder" means "assisting in the underlying felony" with *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*). (Maj. opn., *ante*, pp. 13-16.) *Dickey* appears possibly applicable here because it construed language from the special circumstance in section 190.2, subdivision (c), which is nearly identical to the section 189(e)(2) actus reus language. In *Dickey*, our Supreme Court held that evidence of aiding the underlying felony was enough to show the defendant aided "in the commission of murder" for purposes of the special circumstance. (*Dickey*, *supra*, 35 Cal.4th at p. 900.) Applying *Dickey* to liability for murder after Senate Bill 1437, however, is circular. The special circumstance was found in *Dickey*, as is typical, in a penalty phase *after* a jury found the defendant guilty of murder. (*Dickey*, at p. 900.). At stake in *Dickey* was a mandatory penalty for the murder conviction. The premise of *Dickey*'s analysis was that, "under the felony-murder doctrine, he *was* found guilty of aiding or abetting first degree murders." (*Ibid*.) That is because, at the time, "[a]ll persons aiding or abetting the commission of burglary or

---

[3] Interpreting section 189(e)(2) to require an act that aids the commission of murder does not create an "absurd situation" (maj. opn., *ante*, at p. 15) in relation to section 189(e)(3). Any defendant who has the intent to kill also is recklessly indifferent to human life, and so can be found guilty of murder if he is a major participant in the underlying crime. The two sections operate such that a non-killer participant with the intent to kill is guilty of murder under section 189(e)(2) if he aided the killer in the commission of the murder. Even if he took no such action, however, he may be liable if he was a "major participant" in the underlying felony under section 189(e)(3).

10

robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Ibid*.)

*Dickey*'s premise is the very one that the Legislature abrogated in Senate Bill 1437. Now, when a jury applies section 189(e)(2) to decide whether a defendant assisted "the actual killer in the commission of murder," the defendant has not yet been found guilty of murder. It is no longer true that all persons who aided in a burglary or robbery are guilty of murder when one of them kills during that offense. Whether such a participant is liable for murder is what the jury is now charged with deciding when it applies section 189(e). For this reason, it does not make sense to view the actus reus language in section 189(e)(2) as a "term of art" (maj. opn., *ante*, at p. 14) that the Legislature has grafted from the special circumstance with *Dickey*'s construction of its meaning. Doing so renders meaningless the 21-word actus reus requirement in section 189(e)(2), as, so construed, it provides no restriction on murder liability; one must have aided the underlying felony simply to participate in traditional felony murder.

There is, further, a textual reason to avoid construing the section 189(e)(2) language in the manner that *Dickey* construed the special circumstance's language. In adapting the language, the legislature chose to narrow its scope. The special circumstance applies to a non-killer who with intent to kill "aids . . . *any actor* in the commission of murder in the first degree." (§ 190.2, subd. (c) [italics added].) But the limitation on felony murder liability applies to non-killers who with intent to kill "aided . . . *the actual killer* in the commission of murder." (§ 189(e)(2) [italics added].)

11

In Senate Bill 1437, that is, the Legislature altered that language to require aiding the actual killer rather than just aiding any participant. The majority's reasoning renders that change pointless by holding every participant in the underlying crime aids and abets the murder. Along with making worthless the section 189(e)(2) actus reus requirement, then, the majority gives no effect to a wording change made in adapting that requirement.

This wording change was dispositive in *People v. Ervin* (2021) 72 Cal.App.5th 90, 106-111, where, as here, a trial court had denied a section 1172.6 petition for the failure to state a prima facie case. In a 1993 trial, the jury made a special circumstance finding that the defendant had the intent to kill. (*People v. Ervin*, *supra*, 72 Cal.App.5th at p. 107.) As to the actus reus, it had been instructed to find that the defendant aided "*another in the killing of a human being*." (*Id*. at p. 108.) The Court of Appeal held that the record did not foreclose the defendant's section 1172.6 eligibility because his jury found that he "aided and abetted *another* in the commission of the robbery or burglary (that ultimately led to the killing of a human being) rather than a more specific finding that [he] aided and abetted 'the actual killer . . . with the intent to kill.'" (*Id*. at pp. 108-109; see id. at p. 106 [jury findings did not "categorically preclude [the defendant] from obtaining relief under [section 1172.6] as a matter of law"].)

The majority's analysis conflicts with *Erwin*. We hold today that a finding of the act of aiding a robbery is sufficient under section 189(e)(2) and renders a defendant ineligible for section 1172.6 relief. *Erwin*, in contrast, held that a jury finding of aiding a robbery was not sufficient, even where—more specific than the findings here—the jury

12

found the defendant to have aided not only the robbery but a participant in the *killing* (but did not find he aided the *killer*). As in *Erwin*, a finding of an act that aided the underlying felony is not necessarily enough for a murder conviction under section 189(e)(2), as the Legislature required an act, done with intent to kill, that aided the killer in committing the murder.

### IV.    Lopez is Not Ineligible for Relief as a Matter of Law

For a section 1172.6 petition, the "'prima facie bar was intentionally and correctly set very low.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) At the prima facie stage, we take the petition's assertions as true unless, without engaging in factfinding or weighing evidence, we can conclude that the record refutes the allegations. (*Id.* at pp. 971-972; *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [record "makes clear" that the defendant was the actual killer and only participant].)

The jury instructions at Lopez's 1992 trial permitted him to be found guilty on a felony murder theory, where the victim was shot dead sitting in a car in a McDonald's drive-through line while a gunman robbed him. The court instructed Lopez's jury that he was guilty of murder if, with the "intent or purpose of committing, encouraging, or facilitating" the *robbery*, he "aid[ed], promote[d], encourage[d], or instigate[d] by act or advice its commission."

If the jury had found that Lopez was the shooter, he would be ineligible for resentencing because an actual killer remains guilty after Senate Bill No. 1437 per section 189(e)(1). It was, however, by no means clear Lopez was the gunman. Before trial, the

13

court struck for lack of probable cause the allegation that he personally used a firearm. No witness testified to seeing the killer shoot. Three trial witnesses described a man, running from the scene with a gun, as between five-foot-six and five-foot-eight inches tall. Lopez was six-foot-two, yet his three accomplices were five-foot-five or a "few inches taller." Two of the three witnesses were shown lineups and both identified a person other than Lopez. The People make no argument today that we can conclude the jury necessarily found Lopez was the actual killer.

The question is whether Lopez's conviction is still valid today under section 189(e)(2) because the jury necessarily found that, with intent to kill, Lopez assisted the actual killer in committing murder. In the penalty phase of the trial, the jury found Lopez had the intent to kill. The jury was not asked to find that, when he had that intent, he assisted the killer in the murder. The evidence permitted the jury to convict on a range of acts that assisted the robbery, which can be seen by considering the prosecution's closing arguments. Before the arguments, the prosecution informed the court that, based on the polo shirt that Lopez was wearing that accorded with some witness testimony about the person running from the scene, its primary theory was that Lopez was "running from the crime . . . carrying a murder weapon." But "even if it wasn't Mr. Lopez running with the murder weapon, we've shown . . . three culpable participants in this crime; the driver and two people who were out running doing the crime."

The prosecution then argued those alternative theories in closing. In his closing argument, the prosecutor alluded to the evidence that Lopez's polo shirt matched the

14

person running from the McDonald's. He then quoted and explained the felony murder instruction. The prosecutor rhetorically asked "what would that include?" He argued that accompanying the gunman or driving the car qualified (emphasis added): "it would certainly include *being along, by going with them. It would certainly include *driving the car* to a predetermined location on the other side of all the traffic lights so they could make a quick getaway, turning the car in the right direction and waiting for them. That facilitates [the robbery.]" He added that "[a]ny person who does that aids, promotes, encourages, instigates" the robbery and is guilty of the murder.

The prosecutor further explained that everyone "in on the robbery" was guilty of murder in a way that emphasized this was true even if they had nothing to do with the killing: "Don't come to us and say but my partner promised me he wouldn't use a gun. We don't want to hear it. You're going to do a robbery, you're going to be responsible if someone dies, end of the question. That's it. And we don't care who pulled the trigger. Everyone is guilty of first-degree murder if they were in on the robbery. That's it." The prosecutor ended his principal closing by arguing that, when a gunman heads to do a robbery, he is helped or encouraged both by a driver who parks his car with the motor running to aid in a getaway and by a person who accompanies the gunman.

In his rebuttal, the prosecutor again explained that beside malice there is "another way" to find guilt and "[t]hat is the felony murder rule which I talked about before." He argued "if you find there is a robbery, then you short-circuit all that and you go around it and you end up at first-degree murder." The prosecutor said "[d]on't get me wrong," he

15

was advocating that Lopez was the one that pulled the trigger, but he also emphasized that several types of minimal conduct by an accomplice or driver were enough to aid the robbery: "opening the door and saying go get 'em is aid, encouraging, and facilitating. Parking the car in the right direction; aid, facilitating, encouraging. Going along as a lookout or as moral support is aid and encouraging and facilitating. Speaking up during a robbery is aiding, encouraging, and facilitating."

It is possible that some or all of the jurors concluded that Lopez was the shooter, or that he had a role that directly aided the killer. But the closing arguments illustrate that jurors could have found Lopez guilty of felony murder based on a range of roles. On these facts, we cannot conclude, without weighing evidence, that the jury necessarily found that Lopez "assisted the actual killer in the commission of murder" (section 189(e)(2)) simply because it found that he assisted the attempted robbery.

In fact, this court demonstrated as much through its 1994 opinion on direct appeal, which stated that there was sufficient evidence to support the theory that Lopez accompanied the killer at the McDonald's and "took the rifle from the triggerman while they made their escape." This action legally cannot serve as aiding the commission of *murder*, which at the time of the flight was complete; it can just prove accessory after the fact to murder. (*People v. McDonald*, *supra*, 238 Cal.App.4th 16, 24-25; § 32.) As well, acting only as the getaway driver could serve as an act for accessory to murder but not as aiding and abetting a murder because the murder would be complete. Other peripheral

16

roles that the prosecutor suggested that assisted the robbery arguably would not serve to aid the killer in the murder.[4]

The trial record does not demonstrate that the jury necessarily found that Lopez "with the intent to kill . . . assisted the actual killer in the commission of murder in the first degree." (§ 189(e)(2).) For this reason, I respectfully dissent. I would hold that Lopez has pled a section 1172.6 prima facie case. This does not necessarily mean that he merits resentencing, but only that he is eligible for the hearing contemplated by section 1172.6 to determine whether he qualifies. If tried today, Lopez would have a chance to argue the fifth element of the CALCRIM 540B jury instruction when section 189(e)(2) applies, that he did not aid the actual killer in the commission of the murder. A section 1172.6 hearing provides him the chance to direct evidence and argument to that element, which did not exist in 1992. At the hearing, the People could demonstrate that he could be convicted of murder under any theory permissible today.

RAPHAEL _____

J.

_____

[4] Even though the prosecutor several times argued that the driver had a role that assisted in the attempted robbery, the majority concludes that it can determine (apparently without the evidence-weighing forbidden at this stage) that the jury did not convict Lopez on a view that he was the getaway driver or a passenger. (Maj. opn., *ante*, at pp. 17-18). There was evidence identifying Jose Andrade as the driver at times, but that does not conclusively establish what Lopez did during the McDonald's incident, nor what Andrade did. When successfully seeking an aiding-and-abetting jury instruction, even the prosecutor suggested that Andrade could have been the one running with the gun: "whether or not it was Mr. Lopez running with the gun in his hand or Mr. Howe or Mr. Andrade, I think there is enough evidence to give to this jury on the aiding and abetting."